FINAL COPY
294 Ga. 526

S13A1532. LEWIS v. THE STATE.

MELTON, Justice.

This is the third appearance of this case in this Court. Following Willie Henry Lewis' 2003 conviction for malice murder and numerous other offenses, his 2005 appeal to this Court was dismissed as untimely. See Case No. S05A2037. Lewis filed a pro se extraordinary motion for new trial, and he was appointed new counsel for the purposes of pursuing an out-of-time motion for new trial and a direct appeal. Lewis then filed a motion for an out-of-time appeal, which was granted on June 24, 2011. In the second appearance of Lewis' case in this Court, this Court affirmed Lewis' convictions and sentences for two counts of malice murder and other felonies, vacated a conviction and sentence for possession of a firearm during the commission of a felony and remanded for resentencing on that count, and remanded the case for a hearing on Lewis' claims of ineffective assistance of first appellate counsel. Lewis v. State, 291 Ga. 273 (731 SE2d 51) (2012). The current appeal is from the trial court's order on remand which found no ineffective assistance of first appellate counsel. For

the reasons that follow, we affirm.

As found by this Court in Lewis' second appeal:

Lewis stole a dark colored Jeep Cherokee in DeKalb County on October 5, 2001, confronting the vehicle's owner, Robert Chandler, with a chrome .357 revolver. On October 7, 2001, Lewis accosted Travis Reid and Xavier Dinkins while they were walking along a street. He pointed a .357 chrome revolver at the two men and told them to lie on the ground. Lewis searched them, and, when he discovered that neither man had any money, said that they had three seconds to run before he would shoot. Both men ran; Lewis began firing, and Dinkins was fatally struck. Lewis then ran toward the Jeep Cherokee he had stolen from Chandler. Later that day, police officers responded to a report of a shooting at an apartment complex. There they found Kejuan Webb, fatally shot. After the shooting, a witness saw a man carrying a .357 chrome revolver running to a Jeep Cherokee like that stolen from Chandler. A bullet recovered from this crime scene was later identified as having been fired from a chrome .357 caliber revolver taken from Lewis's home.

On October 8, 2001, Lewis approached Antwon Cox and his younger brother, Herbert Cox, as they walked from Morris Brown College in Fulton County. Lewis produced a .357 caliber chrome revolver and told both brothers to lie on the ground. He searched the Cox brothers and found that Herbert had $30, but that Antwon had no money. Lewis told Antwon that he should thank Herbert for the fact that Herbert had some money, because Lewis had shot a person the day before because that victim did not have any money. Nonetheless, Lewis pointed the revolver at Antwon and pulled the trigger. However, the weapon did not fire, and Lewis fled.

On October 9, 2001, Freddie Perdue had just left class at Morris Brown College and was standing outside a dormitory on a nearby college campus with Walter Williams and Shavez Givens. Lewis and another man, both carrying chrome revolvers, approached and told the men that they would rob them. The

2

assailants searched the victims' pockets; Perdue had only a cell phone, a business card holder, and a hair brush. Lewis told Perdue he would shoot him "anyway," and as Perdue tried to run, Lewis shot him in the chest. Williams tried to flee, but was also shot by Lewis.

On October 10, 2001, Shanta Roman and Jabouri Denson were walking along a street when Lewis and Michael Noble approached them. Both men brandished pistols. Denson and Roman ran until they came to a building and a fence; they threw money to the ground, the assailants picked up the money, and Lewis fired at the two victims, saying he did so in retaliation for them making him run after them. Noble was captured shortly thereafter by police officers.

Police officers recovered Chandler's abandoned Jeep Cherokee; Lewis's fingerprints were found inside. Officers also executed a search warrant at Lewis's residence and recovered clothing consistent with victims' accounts of the perpetrator's clothing. Police also recovered two firearms: a .357 caliber chrome revolver and a .22 caliber chrome revolver. Ballistics tests revealed that the .357 revolver fired bullets that were recovered from the body of Dinkins, the scene of Webb's killing, and the scene of the attempted shooting of Denson and Roman.

Lewis, 291 Ga. at 273-274.

Lewis contends that first appellate counsel was ineffective for failing to present testimony at the motion for new trial hearing that would have shown that Lewis' trial counsel had been ineffective. Specifically, Lewis asserts

that his first appellate counsel was ineffective in that, at the hearing on Lewis's motion for new trial, he failed to question Lewis regarding what the content of his testimony would have been had he chosen to testify at trial; first appellate counsel only asked Lewis about the decision to testify

3

and the manner in which that decision was made.

Lewis, 291 Ga. at 282 (7). It is Lewis' position that the content of the testimony that he would have given at trial would have exposed trial counsel's ineffectiveness for having failed to call him as a witness. We disagree.

"[I]n order to prevail on his claim of ineffective assistance of first appellate counsel, Lewis must show both that first appellate counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. [Cit.]" Lewis, 291 Ga. at 281 (7). In this regard,

> [i]n evaluating appellate counsel's performance, "[t]he question is not whether [an appellate] attorney's decision not to raise [a particular] issue was correct or wise, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt. [Cit.]" [Battles v. Chapman, 269 Ga. 702, 703 (1) (506 SE2d 838) (1998).] Accord Chatman v. Mancill, 280 Ga. 253, 258 (2) (c) (626 SE2d 102) (2006). As to the prejudice prong, the [defendant] must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations and punctuation omitted.) [Walker v. Hagins, 290 Ga. 512, 512-513 (722 SE2d 725) (2012).]

(Citation and punctuation omitted.) Seabolt v. Hall, 292 Ga. 311, 314 (737 SE2d 314) (2013).

Here, the transcript of the remand hearing reveals that Lewis would have testified that he was at home sick during the time of the crimes. Lewis also

4

presented testimony from his grandmother, who allegedly would have given testimony to show that Lewis did not own the gun used in the crimes and to support Lewis' claim that he was at home sick with the flu during the entire time of the crime spree that formed the basis of the charges against him. However, the transcript also reveals that Lewis and his grandmother never told first appellate counsel about any defense theory involving Lewis' alleged illness at the time of the crimes. In fact, first appellate counsel testified that the first time that he had heard anything about this alleged alibi defense was at the remand hearing itself. In this connection, first appellate counsel cannot possibly have performed deficiently by having failed to present testimony of which Lewis and his grandmother had never made him aware. See, e.g., McIlwain v. State, 287 Ga. 115, 118 (5) ( 694 SE2d 657) (2010) (Attorney "could not be ineffective for failing to . . . call a potential alibi witness of whom she was not informed.").

In any event, even if Lewis and his grandmother had informed first appellate counsel of this testimony prior to the motion for new trial hearing, Lewis' claim of ineffective assistance of first appellate counsel would still fail, as appellate counsel's failure to present this testimony did not result in any prejudice to Lewis. Specifically, the purported alibi defense would have done

nothing to show that trial counsel's initial representation of Lewis was somehow ineffective, as the alibi defense fails to rebut the overwhelming evidence connecting Lewis to the crime spree, including Lewis' fingerprints being found inside the stolen Jeep Cherokee involved in the initial murders, witnesses being able to describe him as one of the perpetrators, and substantial evidence showing that Lewis was the one using the .357 revolver to commit the crimes. It cannot be said that the presentation of testimony regarding an alleged alibi defense would have demonstrated that trial counsel's defense strategy was deficient such that the outcome of Lewis' motion for new trial hearing would have been different. Indeed, trial counsel's defense strategy showing that Lewis participated in some of the armed robberies (but not the murders) was reasonable under the circumstances, which would necessarily defeat Lewis' claim that his appellate counsel was ineffective for failing to adequately present the issue of trial counsel's ineffectiveness. See Barker v. Barrow, 290 Ga. 711 (2) (723 SE2d 905) (2012).

Judgment affirmed. All the Justices concur.

Decided February 24, 2014.

Murder, etc. Fulton Superior Court. Before Judge Dempsey.

Charles H. Frier, for appellant.

Paul L. Howard, Jr., District Attorney, David K. Getachew-Smith, Sr., Paige Reese Whitaker, Christopher M. Quinn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Meghan H. Hill, Assistant Attorneys General, for appellee.